[No. 17833.   Department Two.   August 27, 1923.]

W. R. Palmer, *Respondent*, v. Cochrane Brokerage Company, *Appellant*.[1]

Appeal (389)—Review—Amendments Regarded as Made. A complaint for conversion will be deemed amended on appeal where the action was tried below as an action for an accounting, without any objection to the form of the action until the filing of appellant's reply brief on appeal.

Chattel Mortgages (49-1, 49-2) — Disposition of Property by Mortgagee in Possession—Proceeds of Property. Where the mortgagor of crops remained in possession and did the harvesting, advances made to him by the holder of the first mortgage, which made no provision for future advances, cannot be given precedence over a junior mortgage, except as to charges for bailing hay, which was an expense of handling and selling the property chargeable against the proceeds.

Appeal from a judgment of the superior court for Yakima county, Holden, J., entered August 28, 1922, upon findings in favor of the plaintiff, in an action for conversion, tried to the court.   Reversed.

*C. E. Udell* and *A. C. Cherry*, for appellant.

*Joseph C. Cheney*, for respondent.

Tolman, J.—On February 24, 1921, one H. K. Joe executed and delivered to respondent Palmer a promissory note for $1,174, bearing interest at the rate of

[1]Reported in 217 Pac. 1007.

six per cent per annum, due November 1, 1921, and on the same day executed a chattel mortgage on all crops to be grown during the season of 1921 upon a certain forty-acre tract of land then occupied by him as lessee, and upon a certain hay derrick, to secure the payment of the note. The mortgage was duly filed for record within the statutory time.

Being indebted to the Central Bank & Trust Company of Yakima, as evidenced by a note dated January 20, 1921, for $850, with interest at twelve per cent per annum, Joe, on March 12, 1921, executed a second mortgage to that institution to secure the note just mentioned, covering the same crop described in the first mortgage, and on the same day, to secure the same debt, executed another mortgage on other personal property. These mortgages were also duly filed for record.

During the growing season, respondent made some advances to Joe to be used in paying help and buying necessary supplies, and the crops, consisting of alfalfa hay and potatoes, were harvested by Joe. In the fall of the year, Joe authorized respondent to market all the crops, receive the proceeds, and apparently directed that such proceeds be applied first to the payment of labor engaged in making and harvesting the crops, second to the payment of $560 due appellant for seed potatoes furnished with the written consent of respondent, and third to apply the balance upon the Palmer mortgage. Respondent, acting upon this oral authorization, sold two car loads of the potatoes to a dealer for which he received $967.89; hay to another for which he received $226.30; and repossessed the hay derrick, which it is contended was worth $100, or a total of approximately the sum then due on his mortgage. At about the same time, he sold to appellant

three carloads of these potatoes, raised by Joe, of the value of $1,672. In due course appellant rendered to respondent a statement of this transaction, charging against the value of the potatoes received, $200 in cash which it had advanced to Joe to pay help in harvesting the potatoes, $144.50 for sacks and twine furnished to Joe for sacking the potatoes ready for market, and other items covering sorting, freight and inspection, bringing the total deduction up to $1,049.70, and with the statement tendered its check to respondent for $622.30, to balance.

This check was apparently accepted by respondent, but before he could or did cash it, appellant learned of the mortgage to the Central Bank & Trust Company, and that the bank claimed that the Palmer mortgage had already been satisfied, and threatened to hold appellant for the proceeds of the potatoes, whereupon payment was stopped on the check, and appellant, as a means of protecting itself, purchased for full value the note and mortgages of the bank. Respondent demanded from appellant the proceeds of the potatoes to the extent of $621.02 and interest, which he claimed to be still unpaid upon his note and mortgage, and this demand being uncomplied with, he, as plaintiff, instituted this action alleging the wrongful conversion of the potatoes by appellant. The case was tried to the court sitting without a jury, resulting in a judgment for the full amount claimed, and this appeal followed.

Appellant, for the first time, in its reply brief, raises the point that, this being in form an action for conversion, respondent cannot prevail, because it is an admitted fact in the case that respondent himself sold the potatoes to the appellant, and received its check in payment therefor, hence there can be no conversion. This may be admitted, but we think the objection comes

too late.  The action was tried below as one for an accounting, and each party was permitted to go into all of the details of the various transactions to the fullest extent, without any objection based upon the form of the action, and no good reason is shown why this action should now be dismissed and the same matters should be again litigated between the same parties in another action.  Under our liberal rule as to amendments, the complaint will be considered as amended to conform to the proof.

On the merits the case is not so easily disposed of; yet, after assimilating the facts and according to each its relative weight and value, the proper result becomes evident.  Respondent seems to contend that the mortgagor, Joe, put him in possession of the crops before they were harvested, and that, therefore, he should be entitled to have returned to him his advances for harvesting and marketing before any of the proceeds would be applicable to the mortgage debt.  We do not think the evidence justifies this contention.  It clearly appears that the mortgagor remained in possession and himself did the harvesting, and since the Palmer mortgage contained no provision for future advances, we are constrained to hold, under the authority of *Inland Trading Co. v. Edgecombe,* 57 Wash. 257, 106 Pac. 768, and cases there cited, that respondent's advances, except as later mentioned, cannot be given preference over the junior mortgage.  The same case is also authority for the allowance of the cost of baling the hay, which is shown to be $99.70, and was an expense of handling and selling properly chargeable against the proceeds.  Not only so, but by agreement between the liquidation officer in charge of the bank and respondent, made after the bank's mortgage was due and before its purchase by appellant, respondent

was authorized to pay this charge out of the proceeds of the hay, and being a purchaser after maturity, appellant is bound by that agreement. We conclude, therefore, that the trial court should have directed that the proceeds of the two cars of potatoes received by respondent on November 7, 1921, be credited as of that date upon the Palmer mortgage, and the proceeds of the hay, less the baling charges, should have been likewise credited as of December 10, 1921, the date of receipt. These credits produce the following results:

Principal Palmer mortgage.................$1,174.00
Interest thereon at 6% per annum from February 24 to November 7, 1921.............    49.70

Total of principal and interest as of November 7, 1921.............................$1,223.70
Cash received Nov. 7, from sale of two carloads of potatoes to Cardwell.............   967.89

Balance after crediting this payment........  $255.81
Interest on such balance Nov. 7 to Dec. 10, 1921, at 6%.............................     1.41

Total due Dec. 10, 1921...................  $257.22
Cash received from sale of hay,
    Dec. 10.........................  $226.30
Less baling charges................    99.70

Credit to be applied Dec. 10, 1921...........   126.60

Balance due December 10, 1921, after allowing above credit .........................  $130.62

We are unable to determine from the record the exact date when the hay derrick, also covered by the Palmer mortgage, was surrendered to respondent. The value thereof is variously fixed at from $75 to

$100. We think the evidence preponderates as to its being of the value of $100; and since the respondent took it without foreclosure proceedings, any uncertainty in this respect must be resolved against him. It seems that he was well aware of Joe's financial condition as early as December 10, and might have obtained the derrick at or before that date if he so desired. We therefore direct a credit of $100 for the hay derrick as of December 10, 1921, leaving then due to respondent upon his note and mortgage $30.62. The judgment of the trial court should have been for this amount with interest thereon at six per cent per annum from December 10, 1921.

Since appellant has in hand more than the amount for which judgment will be entered, in excess of all of its advances to Joe, it becomes unnecessary to determine whether these advances were so made as to be binding upon respondent, nor does the fact that appellant had a mortgage on other property to secure the same debt affect the situation, because even crediting thereon the value of the additional security, as here shown, there would still remain unpaid on the mortgage debt as much or more than the net value of the potatoes which it received.

The judgment appealed from is reversed, with directions to enter judgment against appellant for the amount above indicated. Appellant will recover its costs on this appeal.

Main, C. J., Fullerton, Parker, and Pemberton, JJ., concur.